# EXHIBIT E



**WWE**
1241 East Main Street
Stamford, CT 06902

C. Scott Amann, VP Legal/Business Affairs

Direct Dial:  (203) 328-2527
Fax:          (203) 353-0236
Email:        scott.amann@wwecorp.com

October 13, 2015

**VIA FEDERAL EXPRESS**

Bryan Emmett Clark
9920 East Farmdale Avenue
Mesa, AZ 85208

Re: **World Wrestling Entertainment, Inc.**
    **Bryan Emmett Clark**
    **Contractor Nostalgia Agreement**

Dear Mr. Clark:

We are looking forward to your participation in WWE's Nostalgia Program.

Enclosed for your signature please find two (2) originals of a Contractor Nostalgia Agreement (the "Agreement") by and between you and World Wrestling Entertainment, Inc. ("WWE"). Please sign both originals of the Agreement in front of a Notary Public and return them to me. After they are countersigned on behalf of WWE, one (1) fully executed original will be returned to you for your files.

If you have any questions or comments, or need any further information, please call me at (203) 328-2527.

Thank you for your prompt attention and cooperation, and we look forward to hearing from you.

Very truly yours,

C. Scott Amann
V.P. Legal/Business Affairs

CSA/jc

Enclosures

# CONTRACTOR NOSTALGIA AGREEMENT

This Contractor Nostalgia Agreement ("Agreement") is entered into by and between WORLD WRESTLING ENTERTAINMENT, INC. ("WWE"), with offices at 1241 East Main Street, Stamford, Connecticut 06902, and BRYAN EMMETT CLARK, an individual residing at 9920 East Farmdale Avenue, Mesa, Arizona 85208("Contractor"), individually referred to as a "Party" and collectively referred to as the "Parties", and shall be effective on the date that WWE executes the Agreement ("Effective Date").

NOW, THEREFORE, in consideration of the promises, covenants and agreements set forth herein and for other good and other valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

1. **SERVICES**: Contractor shall, for the consideration described in Section 6(a) and (b), provide the following services ("Services") during the Term of this Agreement and as directed by WWE:

    (a) permit WWE the right to photograph, videotape or otherwise record Contractor at WWE events, Appearances as defined in Section 1(b), and at such other times and places mutually convenient for and agreed to by the parties ("Events"), provided that such right shall be: (i) exclusive for Events; and (ii) non-exclusive for the purposes of third parties photographing, videotaping or otherwise recording Contractor at appearances and live events that are not Events, provided, however, that Contractor shall not appear in any videotape, DVD or other recording of an appearance that features the name and/or likeness of Contractor either in its title or on its packaging; and

    (b) make, on a basis non-exclusive to WWE, any and all mutually agreeable appearances arranged by or on behalf of WWE ("Appearances").

2. **TERM**: The term of this Agreement shall be for five (5) years commencing on the Effective Date, unless terminated earlier as set forth below ("Initial Term"). Thereafter, this Agreement shall be automatically renewed for an additional successive one (1) year term (the "Renewal Term"), unless WWE provides Contractor with written notice of its intent not renew this Agreement at least thirty (30) days prior to the expiration of the Initial Term (the Initial Term and Renewal Term are collectively referred to hereinafter as the "Term"); it being understood and agreed that if the Agreement is not renewed in accordance with the terms hereof, then the Agreement will expire in normal course on the last day of the Initial Term.

3. **TERRITORY**: The territory for this Agreement shall be the entire world ("Territory").

4. **INTELLECTUAL PROPERTY**:

    (a) All service marks, trademarks and other distinctive and identifying indicia used by Contractor prior to the Effective Date in connection with the business of professional wrestling, including but not limited to Contractor's legal name, nickname, ring name, likeness, personality, character, caricatures, signature, costumes, props, gimmicks, gestures, routines and themes, which are owned by Contractor or in which Contractor has any rights anywhere in the world (collectively, the " Contractor Intellectual Property") are described and identified on Exhibit A attached hereto and incorporated herein by reference. Contractor hereby assigns to WWE the right during the Term and thereafter as provided for in this Agreement including any Sell Off Period set forth in Section 5(l) and WWE hereby accepts all worldwide right, title and interest in and to Contractor's Intellectual Property, including, but not limited to, the rights to license, reproduce, manipulate, promote, expose, exploit and otherwise use the Contractor Intellectual Property. Contractor further acknowledges and agrees that (i) WWE shall own in perpetuity all Footage, as defined in Section 5(b) of the Agreement; (ii) that WWE shall have perpetual rights in the Footage, as set forth in Section 5(c) of this Agreement; and (iii) that, upon completion of the Term, WWE shall have the continued right to use the Contractor Intellectual Property in connection with WWE's exploitation of the Footage or any other copyrighted works that incorporates the Contractor Intellectual Property, which includes by way of example and not limitation WWE's use in the marketing, publicity, advertising, distribution, licensing and/or broadcast of the Footage or any such copyrighted work that incorporates the Contractor Intellectual Property.

(b) Except for the Contractor Intellectual Property specifically set forth on Exhibit A, any intellectual property rights, including but not limited to trademarks, service marks, copyrighted works, and/or distinctive and identifying indicia, including legal name, ring name, nickname, likeness, personality, character, caricatures, signature, props, gestures, routines, themes, incidents, dialogue, actions, gags, costumes or parts of costumes, accessories, crowns, inventions, championship, title or other belts (if applicable), and any other items of tangible or intangible property written, composed, submitted, added, improvised, created and/or used by or associated with Contractor's performance in the business of professional wrestling or sports entertainment which were procured, owned or created by WWE prior to the Term which are described and identified on Exhibit B (collectively the "WWE Intellectual Property") shall belong to WWE, in perpetuity, with WWE retaining all such ownership rights exclusively throughout the world notwithstanding any termination of this Agreement.

(c) WWE may from time to time during the Term create or develop trademarks, service marks, and/or distinctive and identifying indicia, including ring name, nickname, likeness, personality, character, caricatures, signature, props, gestures, routines, themes, incidents, dialogue, actions, gags, costumes or parts of costumes, accessories, crowns, inventions, championship, title or other belts (if applicable), and any other items of tangible or intangible property written, composed, submitted, added, improvised, created and/or used by or associated with Contractor's performance in the business of professional wrestling or sports entertainment which Contractor acknowledges shall belong to WWE, in perpetuity, with WWE retaining all such ownership rights exclusively throughout the world notwithstanding any termination of this Agreement. In such event, Contractor agrees to immediately execute an amendment to this Agreement to add any additional intellectual property rights created pursuant to this Section 4(c) as WWE Intellectual Property.

(d) The Contractor Intellectual Property and the WWE Intellectual Property are hereinafter collectively referred to as "Intellectual Property."

5. **REPRESENTATION, WARRANTY, INDEMNITY AND GRANT OF RIGHTS**:

(a) Contractor hereby represents and warrants to WWE that: (i) he has the sole and exclusive right to unconditionally and exclusively grant to WWE the rights to use Contractor Intellectual Property consistent with the terms of this Agreement and doing so will not violate and/or infringe the rights of any third party; (ii) he is under no contractual or other legal obligation that shall in any way interfere with the exploitation of rights granted to WWE in this Agreement; (iii) he has the full authority to enter into this Agreement and grant the rights set forth herein and perform the services required of him herein; (iv) the obligations created by this Agreement, insofar as they purport to be binding, constitute legal, valid and binding obligations enforceable in accordance with their terms; and (v) as of the date of execution of this Agreement, Contractor hereby acknowledges that he has received all amounts due him in connection with any contract or agreement entered into between Contractor and WWE prior to the terms hereof.

(b) Contractor hereby grants to WWE the exclusive right during the Term to video tape, film, photograph, or otherwise record, or to authorize others to do so, by any media now known or hereinafter discovered, Contractor's appearance, performance, commentary, and any other work product for or related to any or all of the Services. (These recordings by tape, disc, photograph, film, or otherwise are collectively referred to herein as the "Footage").

(c) Notwithstanding the termination of this Agreement for any reason, and notwithstanding any other provision of this Agreement, WWE shall have the right to produce, reproduce, reissue, manipulate, reconfigure, license, manufacture, record, perform, exhibit, broadcast, or otherwise disseminate the Footage in perpetuity by any form of media, now or hereafter devised (including without limitation, free, cable, pay cable, closed circuit and pay-per-view television, the internet, video on demand and subscription video on demand).

(d) Contractor's appearance, performance and work product in connection in any way with the Services shall be deemed work for hire; and notwithstanding the termination of this Agreement, WWE shall own, in perpetuity, all Footage and all of the rights, results, products and proceeds in and to, or derived from the Services and/or Footage (including without limitation, all incidents, dialogue, characters, actions, routines, ideas, gags, costumes or parts of

costumes, accessories, crowns, inventions, championship, title or other belts (if applicable), and any other tangible or intangible materials written, composed, submitted, added, improvised, or created by or for Contractor in connection with appearances in connection with the Services and/or Footage) and WWE may obtain copyright and/or trademark and/or any other legal protection therefor, now known or hereinafter discovered, in the name of WWE and/or on behalf of WWE's designee.

(e)     If WWE directs Contractor, either singly or in conjunction with WWE, to create, design or develop any copyrightable work (herein referred to as a "Development"), such Development shall be deemed work for hire and WWE shall own such Development. All Footage and Developments referred to in this Agreement are collectively referred to as "Works."

(f)     All Works and Contractor's contributions thereto shall belong solely and exclusively to WWE in perpetuity notwithstanding any termination of this Agreement. To the extent that such Works are considered: (i) contributions to collective works, (ii) a compilation, (iii) a supplementary work and/or (iv) as part or component of a motion picture or other audio-visual work, the parties hereby expressly agree that the Works shall be considered "works made for hire" under the United States Copyright Act of 1976, as amended (17 U.S.C. § 101 et seq.). In accordance therewith, all rights in and to the Works shall belong exclusively to WWE in perpetuity, notwithstanding any termination of this Agreement. To the extent that such Works are deemed works other than "works made for hire," Contractor hereby irrevocably assigns in perpetuity to WWE all right, title and interest in and to all rights in such Works and all renewals and extensions of the copyrights or other rights that may be secured under the laws now or hereafter in force and effect in the United States of America or any other country or countries.

(g)     Contractor hereby agrees that WWE shall have the exclusive right in perpetuity to use and exploit Contractor Intellectual Property in connection with the manufacture, production, reproduction, reissuance, manipulation, reconfiguration, distribution, sale, and other commercial exploitation in any manner, now known or hereinafter discovered, of any and all copyrighted materials or goods incorporating the Contractor Intellectual Property. WWE shall own in perpetuity all copyrights in such copyrighted materials and goods and WWE shall be entitled to obtain copyright registrations in WWE's name or on behalf of its designee. Contractor shall provide all reasonable assistance to WWE in so obtaining such copyright registrations.

(h)     In addition to the perpetual rights to use and exploit Contractor Intellectual Property as set forth in Section 5(g) of this Agreement, Contractor agrees that during the Term and any applicable Sell Off Period as provided for in this Agreement, WWE shall have the exclusive right to use, exploit, and license the Contractor Intellectual Property in connection with the manufacture, production, reproduction, reissuance, distribution, sale, and other commercial exploitation in any manner, now known or hereinafter discovered, of goods and merchandise incorporating the Contractor Intellectual Property.

(i)     <u>Book Rights</u>.  Contractor agrees and grants WWE during the Term the unconditional and exclusive right throughout the world to use, simulate and portray Contractor's name, likeness, voice, personality, personal identification and personal experiences, characters if owned by him or WWE, incidents, situations and events which heretofore occurred or hereafter occur (in whole or in part) as it relates in any manner to Contractor's life and Contractor's wrestling career, in connection with the licensing, sublicensing, manufacture, distribution, publication, and exploitation of Contractor's autobiography or authorized biography (collectively "Book Rights").

(j)     <u>Publishing Rights</u>.  Contractor agrees and grants WWE during the Term the unconditional and exclusive right throughout the world to use, simulate and portray Contractor's name, likeness, voice, personality, personal identification and personal experiences, characters if owned by him or WWE, incidents, situations and events which heretofore occurred or hereafter occur (in whole or in part) as it relates in any manner to Contractor's life and Contractor's wrestling career, in connection with the creation and sale of certain movies, or other forms of media now known or hereinafter discovered, as WWE shall determine in its sole discretion (collectively "Publishing Rights").

(k)     <u>Auction Sale Rights</u>.  Contractor agrees and grants WWE during the Term the unconditional and exclusive right throughout the world to sell via the Internet, television or through any other distribution channel now know or hereafter created, by an auction method, any item containing Contractor Intellectual Property which shall include but not be limited to items containing Contractor's signature ("Auction Sale").

(l) <u>Sell Off Period</u>. Upon the expiration or termination of this Agreement, WWE shall have the right to sell any goods and merchandise in inventory, on hand or manufactured containing Contractor Intellectual Property for a period of ninety (90) days immediately following such expiration or termination ("Sell Off Period") provided, however, that: (i) there shall be no restriction on WWE's rights to use or exploit Contractor Intellectual Property in connection with the perpetual rights granted herein by Contractor; and (ii) with respect to goods, merchandise and/or programming that include the Contractor Intellectual Property regarding which WWE or WWE's licensees/designees have made a material time, resources and/or financial investment prior to expiration or termination of this Agreement and which have a commercial life that extends beyond the Sell Off Period (including, without limitation, video games (on all platforms), action figures, books, social media projects, animated projects such as books, cartoons and programming, and/or television programs, etc.), WWE shall have the right to continue development and exploitation of such goods, merchandise and/or programming until the end of the commercial life thereof.

6. **COMPENSATION**:

(a) As a complete buyout for the Services set forth in Section 1(a) and for the rights granted to WWE herein, WWE agrees to pay Contractor a lump sum advance of Ten Thousand U.S. Dollars ($10,000.00), (the "Advance") payable ten (10) days after WWE's execution hereof, which Advance shall be recoupable from any money owed or paid to Contractor at any time as set forth in Exhibit C, which is attached hereto and hereby incorporated by reference. Once WWE has fully recouped the Advance, WWE agrees to pay Contractor any amounts in excess of the Advance due Contractor pursuant to Exhibit C, in the manner set forth in Section 9(a).

(b) In return for the Services set forth in Section 1(b), Contractor shall be paid a mutually agreeable fee per Appearance, which in no event shall be less than Five Hundred US Dollars ($500.00) per Appearance.

(c) Contractor shall be responsible for providing all costumes, wardrobe, props, and make-up necessary for the performance of Contractor's Services at any Event and Contractor shall bear all costs incurred in connection with his transportation to and from any such Events (except for those transportation costs which are covered by WWE's then current Travel Policy), as well as the costs of food consumed and hotel lodging utilized by Contractor in connection with his performance of the Services.

(d) Contractor acknowledges and agrees that at all times during the Term Contractor shall be an independent contractor, and therefore, WWE shall have no responsibility to make any deductions or withholding from Contractor's compensation, whether for federal, state, local, or any other taxes, unemployment compensation, insurance, FICA (social security), workers' compensation, or any other assessments or contributions. Further, because Contractor is an independent contractor, Contractor acknowledges and agrees that WWE has no obligation to provide any medical, disability, workers' compensation, or any other insurance or benefits generally provided to employees of WWE.

7. **SUSPENSION AND TERMINATION**:

(a) This Agreement may be terminated by WWE during the Term for any reason whatsoever by providing Contractor ninety (90) days' advance written notice of said termination. In the event of termination pursuant to this Section 7(a), Contractor shall not at any time appear under, use, refer to or exploit in any manner, parenthetically or otherwise, any WWE Intellectual Property. Notwithstanding Contractor's termination pursuant to Section 7(a), Contractor shall continue to receive any payments otherwise due pursuant to Section 6(a).

(b) Contractor shall act at all times with due regard to public morals and conventions during the Term of this Agreement. If Contractor shall have committed or shall commit any act or do anything that is or shall be an offense or violation involving moral turpitude under Federal, state or local laws, or which brings Contractor into public disrepute, contempt, scandal or ridicule, or which insults or offends the community or any employee, agent or affiliate of WWE or which injures Contractor's reputation in WWE's sole judgment, or diminishes the value of Contractor's services or Contractor Intellectual Property to the public or WWE, then at the time of any such act, or

any time after WWE learns of any such act, WWE shall have the right to: (i) fine Contractor in an amount to be determined by WWE; and/or (ii) immediately suspend the terms of this Agreement; and/or (iii) terminate the terms of this Agreement. Should this Agreement be suspended pursuant to this Section 7(b), WWE shall only pay Contractor the amount earned as of the date of suspension; all further monies due will be accrued by and held by WWE until the suspension has ended or WWE elects to then terminate the Agreement. Should this Agreement be terminated pursuant to this Section 7(b), WWE shall have no further payment obligations to Contractor.

8. **BODILY INJURY RELEASE/INSURANCE/ASSUMPTION OF RISK:**

(A) CONTRACTOR SHALL BE RESPONSIBLE FOR HIS OWN COMMERCIAL GENERAL LIABILITY INSURANCE, WORKERS' COMPENSATION INSURANCE, PROFESSIONAL LIABILITY INSURANCE, AS WELL AS ANY EXCESS LIABILITY INSURANCE, AS HE DEEMS APPROPRIATE TO INSURE, INDEMNIFY AND DEFEND CONTRACTOR WITH RESPECT TO ANY AND ALL CLAIMS ARISING OUT OF HIS OWN ACTS, TRANSACTIONS, OR CONDUCT AS A PROFESSIONAL WRESTLER.

(B) CONTRACTOR ACKNOWLEDGES THAT THE PARTICIPATION AND ACTIVITIES REQUIRED BY CONTRACTOR IN CONNECTION WITH HIS PERFORMANCE IN A PROFESSIONAL WRESTLING EXHIBITION MAY BE DANGEROUS AND MAY INVOLVE THE RISK OF SERIOUS BODILY INJURY. CONTRACTOR KNOWINGLY AND FREELY ASSUMES FULL RESPONSIBILITY FOR ALL SUCH INHERENT RISKS AS WELL AS THOSE DUE TO THE NEGLIGENCE OF WWE OR OTHER TALENT.

(C) CONTRACTOR HEREBY RELEASES, WAIVES AND DISCHARGES WWE FROM ALL LIABILITY TO CONTRACTOR AND COVENANTS NOT TO SUE WWE FOR ANY AND ALL LOSS OR DAMAGE ON ACCOUNT OF INJURY TO THEIR PERSON OR PROPERTY OR RESULTING IN SERIOUS OR PERMANENT INJURY TO CONTRACTOR OR IN CONTRACTOR'S DEATH, WHETHER CAUSED BY THE NEGLIGENCE OF WWE OR OTHER TALENT UNDER CONTRACT TO WWE.

(D) CONTRACTOR MAY AT HIS ELECTION OBTAIN HEALTH, LIFE AND/OR DISABILITY INSURANCE TO PROVIDE BENEFITS IN THE EVENT OF PHYSICAL INJURY ARISING OUT OF HIS PROFESSIONAL ACTIVITIES; AND CONTRACTOR ACKNOWLEDGES THAT WWE SHALL NOT HAVE ANY RESPONSIBILITY FOR SUCH INSURANCE OR PAYMENT IN THE EVENT OF PHYSICAL INJURY ARISING OUT OF HIS PROFESSIONAL ACTIVITIES.

(E) IN THE EVENT OF PHYSICAL INJURY ARISING OUT OF CONTRACTOR'S PROFESSIONAL ACTIVITIES, CONTRACTOR ACKNOWLEDGES THAT AS AN INDEPENDENT CONTRACTOR HE IS NOT ENTITLED TO ANY WORKERS' COMPENSATION COVERAGE OR SIMILAR BENEFITS FOR INJURY, DISABILITY, DEATH OR LOSS OF WAGES; AND CONTRACTOR SHALL MAKE NO CLAIM AGAINST WWE FOR SUCH COVERAGE OR BENEFIT.

9. **AUDIT/RECORDS:**

(a) WWE shall prepare and send statements as to royalties payable hereunder to Contractor within ninety (90) days following the end of each quarter, based upon the royalties received and processed by WWE in the previous quarter, together with payment of royalties, if any, earned by Contractor hereunder during such quarter-annual period, less advances and/or debits made by WWE on Contractor's behalf.

(b) WWE shall maintain books of account related to the payment of royalties hereunder at its principal place of business. Contractor, or Contractor's designated independent certified public accountant, who is a member in good standing of the AICPA, may at Contractor's sole expense examine WWE's books insofar as they pertain to this Agreement for the purpose of verifying the accuracy thereof, during WWE's normal business hours and upon reasonable notice. Such audit shall be conducted in a manner that will not unreasonably interfere with WWE's

normal business operations. Contractor shall not audit WWE's books and records more than twice during any calendar year and no such audit shall be conducted later than six (6) months after the most recent statement of royalties is given, delivered or sent to Contractor. Each audit is limited to five (5) days in duration. Statements of royalties may be changed from time to time to reflect year-end adjustments, to correct clerical errors and for similar purposes.

(c) Contractor shall be deemed to have consented to all statements of royalties and all other accountings provided by WWE hereunder and each such statement of royalties or other accounting shall be conclusive, final, and binding; shall constitute an account stated; and shall not be subject to any objection for any reason whatsoever unless an audit has been conducted by Contractor to WWE within one (1) year from the date the royalty statement was given, delivered or sent to Contractor.

(d) No claim shall be filed against WWE or WWE's affiliates that disputes any statement of royalties or accounting given by WWE hereunder or that makes any claim for royalties or royalty payments, unless the same is commenced or filed within one (1) year after the date such statement or accounting is first given, delivered or sent to Contractor.

10. **CONFIDENTIALITY**: Contractor acknowledges and agrees that it is a condition precedent to this Agreement that Contractor sign the Confidentiality Agreement, which is attached hereto as Exhibit D and hereby incorporated herein by reference and made a part hereof.

11. **ASSIGNMENT**: This Agreement contemplates the personal services of Contractor and is not assignable by Contractor. WWE may assign this Agreement in whole or in part, without limitation or restriction.

12. **GOVERNING LAW; JURISDICTION**:

a. Governing Law: This Agreement and all claims or disputes arising out of or relating in any way to this Agreement shall be governed by, and construed in accordance with, the laws of the State of Connecticut.

b. Jurisdiction: In the event there is any claim, dispute, or other matter in question arising out of or relating in any way to this Agreement or the performance thereunder (including, without limitation, any claims in law or equity whether based on torts, contracts or otherwise), it shall be submitted solely to the U.S. District Court for the District of Connecticut or the Connecticut Superior Court for the Judicial District of Stamford/Norwalk at Stamford, Connecticut, as appropriate. This provision to submit all claims, disputes or matters in question to the federal or state courts in the State of Connecticut shall be specifically enforceable; and each party, hereby waiving personal service or process, consents to jurisdiction in Connecticut for purposes of any other party seeking or securing any legal and/or equitable relief. The provisions contained in this Paragraph shall survive the termination and/or expiration of this Agreement.

13. **RELEASE**: In consideration of the compensation described in Section 6(a), Contractor releases and forever discharges WWE and its parents, subsidiaries, affiliates, predecessors, successors and/or assigns, together with their respective past, present and future officers, directors, employees, agents, from any and all claims, actions, demands, judgments, liabilities or damages whatsoever, in law or equity, whether now known or unknown, claimed or unclaimed, asserted or unasserted, foreseen or unforeseen, discovered or undiscovered, accrued or unaccrued, contingent or fixed, which Contractor ever had, now has, or may have, for, upon, or by reason of any matter, cause or thing from the beginning of the world to the date of this Agreement.

14. **NOTICES**: Any notices are to be sent by certified mail, return receipt requested, federal express, or first class postal service and addressed as follows:

TO WWE: World Wrestling Entertainment, Inc.
1241 East Main Street
Stamford, Connecticut 06902
Attention: General Counsel

TO CONTRACTOR:        Bryan Emmett Clark
                      9920 East Farmdale Avenue
                      Mesa, Arizona 85208

**15.    SEVERABILITY**: In the event that any part, provision or portion of any provision of this Agreement shall be declared invalid or unenforceable for any reason by a court of competent jurisdiction, such provision or portion thereof shall be considered separate and apart from the remainder of this Agreement, which shall remain in full force and effect.

**16.    INDEMNITY**: Contractor shall hold WWE, its parent, subsidiary and affiliate companies and the directors, officers, employees, contractors, licensees, successors, assigns and agents of the foregoing, harmless from all claims, liabilities, damages and costs arising from any breach or alleged breach by Contractor of any representation, warranty or agreement made by Contractor hereunder.

**17.    REMEDIES**: The waiver by either Party of any breach hereof shall not be deemed a waiver of any prior or subsequent breach hereof. All remedies of either Party shall be cumulative and the pursuit of one remedy shall not be deemed a waiver of any other remedy. In no circumstances whatsoever, shall either Party to this Agreement be liable to the other Party for any punitive or exemplary damages; and all such damages, whether arising out of the breach of this Agreement, or otherwise, are expressly waived.

**18.    NO AGENCY**: No agency relationship is created between WWE and Contractor by virtue of this Agreement. Contractor has no authority to bind WWE to any contract, agreement or other obligation with any third parties, unless specifically authorized in writing, by WWE's Executive Vice President of Business Strategies.

**19.    INTEGRATION**: This Agreement contains the complete understanding existing between the parties and supersedes any previous written or verbal understandings; provided, however, that pre-existing royalty obligations that may exist by and between WWE and Contractor (by way of, for example, a prior expired or terminated Booking Contract by and between WWE and Contractor) shall not be superseded by this Agreement. This Agreement may not be amended except by a writing signed by authorized representatives of Contractor and WWE.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

WORLD WRESTLING ENTERTAINMENT, INC.          BRYAN EMMETT CLARK
("WWE")                                      ("Contractor")


By: _____          By: _____
       Mark Carrano                                 Bryan Emmett Clark
       VP, Talent Relations

Date:_____          Date:_____

STATE OF                      )
                                   ) ss:
COUNTY OF                )

    On _____, 2015 before me personally came to me known Bryan Emmett Clark, and known to me to be the individual described in, and who executed the foregoing Agreement, and duly acknowledged to me that he executed the same.

                                                                                                   Notary Public

My commission expires: _____


STATE OF CONNECTICUT )
                                 ) ss: Stamford
COUNTY OF FAIRFIELD    )

    On _____, 2015, before me Mark Carrano, Vice President, Talent Relations, personally came to me known, and known to me to be the individual described in, and who executed the foregoing, and duly acknowledged to me that he is a duly authorized corporate officer of World Wrestling Entertainment, Inc., and that he executed the same on behalf of said company.

                                                                                                              Notary Public

My commission expires: _____

**EXHIBIT A**

CONTRACTOR INTELLECTUAL PROPERTY

Bryan Emmett Clark
Bryan Clark

**EXHIBIT B**

<u>WWE INTELLECTUAL PROPERTY</u>

Adam Bomb
Wrath

<u>Team/Tag Names:</u>
Blood Runs Cold
Kronik
New Blood
Millionaires Club

<u>Finishing Moves:</u>
Atom Smasher
Neutron Bomb
Death Penalty
Meltdown
High Times
Total Meltdown

## EXHIBIT C

1. **LICENSED PRODUCT ROYALTIES:**

    (a) <u>No Royalties Paid to Contractor</u>. Except as specifically set forth below in paragraphs 1(b) – 1(e) of this Exhibit C and paragraphs 2-5 of this Exhibit C, Contractor shall not be eligible for any royalties with respect to any other goods, services or otherwise which includes, by way of example and not limitation, the following: (i) revenue or fees from the live or taped broadcast, transmission, exhibition, internet broadcast or internet streaming of a pay per view event, regardless of whether such broadcast, transmission, exhibition, internet broadcast or internet streaming comprises the entire, or a portion, of such pay per view event; (ii) television license revenues or fees; (iii) WWE Network revenues or fees; (iv) television/network subscription fees; (v) internet subscription fees; (vi) subscription video on demand fees; (vii) magazine subscription fees and/or advertising; (vii) distribution fees of any kind paid to WWE by any entity in connection with the exploitation of the Intellectual Property; and/or (viii) advertising, marketing and/or promotional revenue or fees of any kind relating to WWE programming, the WWE Network, WWE consumer products, or any other products services, or programming (whether associated with WWE or not).

    (b) <u>Licensed Product Sale--Sole Performer</u>. In the event that the Intellectual Property is used alone and not in conjunction with the intellectual property of Other WWE Talent via a Licensed Product Sale, Contractor shall be paid twenty-five percent (25%) of the Licensed Products' Net Receipts received by WWE with respect to the Licensed Product Sale. Licensed Products' Net Receipts means the gross amount received by WWE from a Licensed Product Sale less expenses incurred by WWE or its licensing agent. "Licensed Product Sale" shall mean the sale, other than an Auction Sale as defined in Section 5(k) of the Contractor Nostalgia Agreement to which this Exhibit C is attached (the "Nostalgia Agreement"), of any product, merchandise, consumer material or good, other than Books as defined in Section 1(d) of this Exhibit C and Pay Per View/DVD Home Videos as defined in Section 3(a) of this Exhibit C, which is made pursuant to a license agreement between WWE and a party wherein a party is granted the contractual right and obligation to manufacture, distribute, and sell the product, merchandise, consumer material or good to wholesale and/or retail customers through designated distribution channels. "Other WWE Talent" shall mean a professional wrestler who has an agreement with WWE and to whom WWE is obligated to pay royalties.

    (c) <u>Licensed Product Sale---Other Performers</u>. In the event that the Intellectual Property is used together with the intellectual property of Other WWE Talent via a Licensed Product Sale, WWE shall allocate twenty-five percent (25%) of the Licensed Products Net Receipts to be paid pro-rata among Contractor and all Other WWE Talent so featured.

    (d) <u>Book Sales</u>. In the event that pursuant to the rights granted in Section 5(i) of the Nostalgia Agreement, WWE publishes or grants to a third party the right to publish Contractor's autobiography ("Book"), Contractor shall be paid an amount which shall be equal to fifty percent (50%) of the "Licensed Products' Net Receipts" less the cost of any photography, illustration and/or writer fees. "Licensed Products' Net Receipts" shall mean the gross amount received by WWE from the publication, sale and distribution of the Book less any out of pocket expenses incurred or paid by WWE, other than photography, illustration and/or writer fees which are the sole responsibility of Contractor.

    (e) <u>Publishing Rights</u>. As respects Contractor's compensation in connection with WWE's or WWE's designee's exploitation of the Publishing Rights granted to WWE as set forth in Section 5(j) of the Nostalgia Agreement, the parties shall negotiate in good faith for a period of thirty (30) days commencing immediately after WWE advises Contractor that WWE desires to exploit the Publishing Rights ("Negotiation Period"). However, upon the expiration of the Negotiation Period, if the parties have not agreed on the compensation to be paid Contractor for WWE's exploitation of the Publishing Rights, the parties agree that Contractor shall be paid an amount that is equal to the lowest compensation paid by WWE within the previous three (3) years to Other WWE Talent who have received payment for WWE's exploitation of such talent's own Publishing Rights.

2. **DIRECT SALES ROYALTIES:**

 (a) <u>Direct Sale--- Sole Performer</u>. In the event that the Intellectual Property is used alone and not in conjunction with the intellectual property of Other WWE Talent (but not as a Featured Performer as defined in Section 4(a) of this Exhibit C) via a Direct Sale, Contractor shall be paid five percent (5%) of the Direct Sales Net Receipts, defined as gross receipts to WWE from a Direct Sale reduced by returns and a thirty percent (30%) WWE administrative fee. "Direct Sale" shall mean a sale by any method other than a Licensed Product Sale, Auction Sale, and a Direct Venue Sale, as defined in Section 2(c) of this Exhibit C, wherein WWE has or retains the right and/or obligation to manufacture, distribute or sell any product, merchandise, consumer material or good, other than Books and Pay Per View/DVD Home Videos, to an end user and where such sale may be made by any distribution method (e.g., catalog, television or any internet site owned or controlled by WWE).

 (b) <u>Direct Sale---Other Performers</u>. In the event that the Intellectual Property is used together with the intellectual property of Other WWE Talent via a Direct Sale, WWE shall allocate five percent (5%) of the Direct Sales Net Receipts to be paid pro-rata among Contractor and all Other WWE Talent so featured.

 (c) <u>Direct Venue Sale---Sole Performer</u>. In the event that the Intellectual Property is used alone and not in conjunction with the intellectual property of Other WWE Talent via a Direct Venue Sale, Contractor shall be paid five percent (5%) of the Direct Venue Sales Net Receipts, defined as gross receipts to WWE from a Direct Venue Sale reduced by any expenses charged to WWE by the venue for the sale of the product, merchandise, consumer materials or goods. "Direct Venue Sale" shall mean the sale of any product, merchandise, consumer material or good, other than Books and Pay Per View/DVD Home Videos, which occurs inside or outside of the venue of a WWE live event.

 (d) <u>Direct Venue Sale---Other Performers</u>. In the event that the Intellectual Property is used together with the intellectual property of Other WWE Talent via a Direct Venue Sale, WWE shall allocate five percent (5%) of the Direct Venue Sales Net Receipts to be paid pro-rata among Contractor and all other talent so featured.

3. **DVD/HOME VIDEO**

 (a) <u>Sold By Licensees As A Single Unit</u>. In the event that the Intellectual Property is used together with the intellectual property of Other WWE Talent in a single unit sale of Pay Per View DVD/Home Videos (as defined below) which is sold by a third party pursuant to a license agreement, WWE shall allocate twenty-five (25%) percent of the Net Receipts (as defined below) to a talent royalty pool, for which WWE shall pay Contractor and all Other WWE Talent appearing in such Pay Per View DVD/Home Videos pro-rata based upon an amount equal to the same percentage that was paid to Contractor and all Other WWE Talent for appearing in the live Pay-Per-View. "Pay Per View/DVD Home Videos" shall mean a DVD and/or home video produced by WWE which is a reproduction of an entire live pay per view event. "Net Receipts" shall mean the gross amount received by WWE less any and all costs incurred by WWE.

 (b) <u>Sold By Licensees As A Collection Set</u>. In the event that the Intellectual Property is used together with the intellectual property of Other WWE Talent in the sale of a Collection Set (as defined below) which is sold by a third party pursuant to a license agreement, WWE shall allocate twenty-five (25%) percent of the Net Receipts to a talent royalty pool, which talent royalty pool shall be divided into separate talent royalty pools based upon the number of videos or DVDs included in the Collection Set and then, WWE shall pay Contractor and all Other WWE Talent appearing in such Pay Per View DVD/Home Videos pro-rata based upon an amount equal to the same percentage that was paid to Contractor and all Other WWE Talent at the time that the individual video and/or DVD that is part of the Collection Set was first released. "Collection Set" shall mean a collection set featuring multiple Pay Per View DVD/Home Videos (e.g., WrestleMania Box Set").

 (c) <u>Sold By WWE As A Single Unit</u>. In the event that the Intellectual Property is used together with the intellectual property of Other WWE Talent in a single unit sale of Pay Per View DVD/Home Videos which is sold by WWE directly, via a distribution agreement or through any means whatsoever, other than via a licensing agreement, WWE shall allocate five (5%) percent of the Net Receipts to a talent royalty pool, for which WWE shall

pay Contractor and all Other WWE Talent appearing in such Pay Per View DVD/Home Videos pro-rata based upon an amount equal to the same percentage that was paid to Contractor and all Other WWE Talent for appearing in the live Pay-Per-View.

(d) Sold By WWE As A Collection Set. In the event that the Intellectual Property is used together with the intellectual property of Other WWE Talent in the sale of a Collection Set which is sold by WWE directly, via a distribution agreement or through any means whatsoever, other than via a licensing agreement, WWE shall allocate five (5%) percent of the Net Receipts to a talent royalty pool, which talent royalty pool shall be divided into separate talent royalty pools based upon the number of videos or DVDs included in the Collection Set and then, WWE shall pay Contractor and all Other WWE Talent appearing in such Pay Per View DVD/Home Videos pro-rata based upon an amount equal to the same percentage that was paid to Contractor and all Other WWE Talent at the time that the individual video and/or DVD that is part of the Collection Set was first released.

4. **DVD/HOME VIDEO---FEATURED PERFORMER:**

(a) Licensed Product Sales. If Contractor is considered a "Featured Performer" in respect of the sale of the first one hundred and fifty thousand (150,000) units of a DVD and/or home video which is made pursuant to a Licensed Product Sale then, in addition to the compensation due Contractor pursuant to Section 1(c) of Exhibit C, WWE shall pay five percent (5%) of the Net Receipts paid to WWE with respect to the Licensed Product Sale of the DVD and/or home videos to Contractor if Contractor is the only Featured Performer or if there are multiple Featured Performers then to Contractor and all other Featured Performers in such DVD and/or home videos on an equal/pro-rata basis. If the aggregate DVD and home video sales pursuant to this Section 4(a) exceeds 150,000 units, WWE shall instead pay ten percent (10%) of WWE's Net Receipts paid to WWE to Contractor if Contractor is the only Featured Performer or if there are multiple Featured Performers then in the equal/pro-rata basis as set forth in the preceding sentence retroactive to the first 150,000 units. WWE shall determine in its sole discretion whether Contractor shall be deemed a "Featured Performer".

(b) Direct Sale. If Contractor is considered a "Featured Performer" in respect of the sale of the first one hundred and fifty thousand (150,000) units of a DVD and/or home video which is made pursuant to a Direct Sale then, in addition to the compensation due Contractor pursuant to Section 2(b) of this Exhibit C, WWE shall pay five percent (5%) of the Net Receipts paid to WWE with respect to the Direct Sale of the DVD and/or home videos to Contractor if Contractor is the only Featured Performer or if there are multiple Featured Performers then to Contractor and all other Featured Performers in such DVD and/or home videos on an equal/pro-rata basis.. If the aggregate DVD and home video sales pursuant to this Section 4(b) exceeds 150,000 units, WWE shall instead pay ten percent (10%) of WWE's Net Receipts paid to WWE to Contractor if Contractor is the only Featured Performer or if there are multiple Featured Performers then in the equal/pro-rata basis as set forth in the preceding sentence retroactive to the first 150,000 units.

(c) Direct Venue Sale. If Contractor is considered a "Featured Performer" in respect of the sale of the first one hundred and fifty thousand (150,000) units of a DVD and/or home video which is made pursuant to a Direct Venue Sale then, in addition to the compensation due Contractor pursuant to Section 2(d) of this Exhibit C, WWE shall pay five percent (5%) of the Net Receipts paid to WWE with respect to the Direct Venue Sale of the DVD and/or home video to Contractor if Contractor is the only Featured Performer or if there are multiple Featured Performers then to Contractor and all other Featured Performers in such DVD and/or home videos on an equal/pro-rata basis. If the aggregate DVD and home video sales pursuant to this Section 4(c) exceeds 150,000 units, WWE shall instead pay ten percent (10%) of WWE's Net Receipts paid to WWE to Contractor if Contractor is the only Featured Performer or if there are multiple Featured Performers then in the equal/pro-rata basis as set forth in the preceding sentence retroactive to the first 150,000 units.

5. **AUCTION SALES**:

(a) Sole Performer. In respect of an Auction Sale pursuant to Section 5(k) of the Nostalgia Agreement, if the Intellectual Property is used alone and not in conjunction with the intellectual property of Other WWE Talent, Contractor shall be paid thirty five (35%) percent of the "Net Sales", defined as the gross revenue received for an Auction Sale less (i) the cost of goods related to the item sold; (ii) any shipping or freight charges;

and (iii) WWE's administrative fee which shall be equal to thirty (30%) percent of the gross revenue received from the Auction Sale of the item sold.

        (b)    <u>Other Performers</u>. In respect of an Auction Sale pursuant to Section 5(k) of the Nostalgia Agreement, if the Intellectual Property is used together with intellectual property of Other WWE Talent, WWE shall allocate thirty five (35%) percent of the "Net Sales" as defined in Section 5(a) of this Exhibit C to a talent royalty pool, from which WWE shall pay Contractor and all Other WWE Talent appearing in such product pro-rata among Contractor and all Other WWE Talent so featured.

## **EXHIBIT D**

## CONFIDENTIALITY

  I, Bryan Emmett Clark ("Contractor") hereby acknowledge and agree that in consideration of World Wrestling Entertainment, Inc.'s ("WWE") agreement to use Contractor's services as an independent contractor, and continued agreement to use those services, Contractor shall not, at any time while working for WWE, or after the termination of this Agreement for any reason whatsoever, disclose to any person, organization, or publication, or utilize for the benefit or profit of Contractor or any other person or organization, any sensitive or otherwise confidential business information, idea, proposal, secret, or any proprietary information obtained while with WWE and/or regarding WWE, its employees, independent contractors, agents, officers, directors, subsidiaries, affiliates, divisions, representatives, or assigns.  Included in the foregoing, by way of illustration only and not limitation, are such items as reports, business plans, sales information, cost or pricing information, lists of suppliers or customers, talent lists, story lines, scripts, story boards or ideas, routines, gags, costumes or parts of costumes, accessories, crowns, inventions, championship, title or other belts (if applicable) and any other tangible or intangible materials written, composed, submitted, added, improvised, or created by or for Contractor in connection with appearances in the Programs, information regarding any contractual relationships maintained by WWE and/or the terms thereof, and/or any and all information regarding wrestlers engaged by WWE.

  Notwithstanding the foregoing, Contractor's obligation of confidentiality shall not include information which (i) at the time of disclosure was in the public domain; (ii) after such disclosure, becomes generally available to the public other than through any act or omission by Contractor; and (iii) is required to be disclosed by applicable law, government order or regulation or by order or decree of any court of competent jurisdiction, provided that prior written notice of such disclosure is furnished to WWE in a timely manner in order to afford WWE an opportunity to seek a protective order against such disclosure.

  Contractor acknowledges and agrees that Contractor's Agreement to be bound by the terms hereof is a material condition of WWE's willingness to use and continue to use Contractor's services.

_____
BRYAN EMMETT CLARK
("Contractor")