## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

————————————————————————

JOSEPH M. LAURINAITIS, *et al.*,

        Plaintiffs,

v.                                    Case No. 3:16-CV-01209-WWE

WORLD WRESTLING
ENTERTAINMENT, INC., *et al.*,

        Defendants.

————————————————————————

## PLAINTIFFS' CIVIL RICO CASE STATEMENT

Plaintiffs, through the undersigned Counsel, hereby submit this Civil RICO Case Statement, pursuant to this District's Local Standing Order in Civil RICO Cases:

1. <u>The alleged unlawful conduct that is claimed to be in violation of 18 U.S.C. §§ 1962(a), (b), (c) and/or (d).</u>

Defendant, WWE, is the largest wrestling entertainment organization in the world and since purchasing its main competitor in 2001, has had no serious industry rivals.  The company generates approximately $500,000,000.00 in revenue annually, operates over numerous states and foreign countries, and holds events in arenas in numerous states, on television, through pay-per-view programs and through the disposition of "streaming media", over the internet, videotapes, and DVD discs.  WWE, therefore, exercises a significant impact on interstate commerce with respect to all of its entertainment and corporate activities.  WWE wrestlers, including the Plaintiffs, perform in hundreds of matches per year and travel extensively from city to city and sometimes to foreign countries.

The Complaint, Dkt. No. 1, contains numerous allegations that Defendant World Wrestling Entertainment, Inc., (the WWE "Enterprise"), operating under the direction and control of its

primary voting shareholder, Defendant Vincent K. McMahon ("VKM"), acting Individually and as the Trustee of numerous Family Trusts named as Defendants, intentionally defrauded the Plaintiffs into believing that there was little to no risk of brain injury associated with the highly choreographed WWE performances in which the Plaintiffs appeared as WWE wrestlers, referees, and characters.  This fraudulent scheme was carried out through many mechanisms detailed herein and in the Complaint.

One of the principal strategies was the intimidation and coercion of the Plaintiffs into executing unconscionable Booking Contracts through which their every employment activity was controlled and through which their misclassification as "Independent Contractors" was enshrined in direct contravention to the near complete control exercised over their employment activities. The Second Circuit has held that the "label used in the contract between the parties is not determinative of employment status". *Sharky v Ultramar,* 70 F. 3d 226, 232 (1995). "[T]he 'greatest emphasis' should be placed…on the extent to which the hiring party controls the 'manner & means' by which the worker completes his or her assigned task". *Eisenberg v. Advance Relocation & Storage, Inc.*, 237 F. 3d 111. 114 (2nd Cir. 2000).

Count I of the Complaint covers the allegations of how the misclassification was achieved and many of its consequences.  In sum, the Employer WWE, acting through VKM, misclassified the Plaintiffs as Independent Contractors instead of as Employees, resulting in substantial financial detriment to the Plaintiffs and significant financial benefit to the Defendants. *See*, *e.g.*, Leberstein, Seth, "Independent Contractor Misclassification Imposes Huge Costs on Workers and Federal and State Treasuries", National Employment Law Project.

More particularly, had the Plaintiffs been characterized correctly as Employees, they would have received substantial benefits under state and federal law which would have directly resulted

2

in monetary gain to them and monetary loss to the WWE and its controlling shareholder, VKM. Specifically:

a.     WWE would have been required to purchase Workers' Compensation insurance in many of the states in which the Plaintiffs wrestled and to have paid for same.  That Workers' Compensation insurance would have provided payments for the medical procedures needed by the Plaintiffs as a result of the numerous injuries they sustained while in the employment of the WWE. Prior to the enactment of the Patient Protection and Affordable Care Act, health insurance policies throughout the United States either contained a blanket exception for prior existing injuries.  In contrast, Workers' Compensation policies generally required payment for injuries, regardless of fault, sustained on the job, and for the consequences of those injuries, and for follow-up medical care necessitated by those injuries.  There is no dispute that the Plaintiffs each suffered numerous injuries while employed by the WWE, and were cost substantial money that the WWE saved through the misclassification.  Injuries are the daily fare of the WWE.

The Plaintiffs are NOT seeking "personal injury" damages through the RICO Count as the Defendants may contend, but are instead seeking their direct monetary loss for (among other items) the very substantial cost of having to pay for health insurance to cover medical services, and medications that the Defendants would have been required to insure but for their intentional and fraudulent misclassification of the Plaintiffs as "independent contractors".

b.     The direct lack of Workers' Compensation insurance and "group plan medical coverage" available to all WWE Employees except for those who were fraudulently classified as "Independent Contractors" (particularly the Plaintiffs) had a direct and significant financial impact upon the Plaintiffs, costing the Plaintiffs significant money each year and saving substantial money for the Defendant and directly benefiting its controlling shareholder, VKM. By concocting a

fraudulent scheme to avoid Workers Compensation Insurance in its entirety, the Defendant Enterprise saved very substantial money each and every year and the cost of payments for health coverage or directly for uninsured and/or uninsurable medical bills was shifted to the Plaintiffs.

For example, the rates in Connecticut for Workers Compensation Insurance range from a low of $0.18/$100 of payroll for clerical workers to a high of $31.50/$100 for Carpentry in non-residential construction[1]. Repeated injury claims increase the premiums. Even assuming a moderate Workers' Compensation rate of 12% this would mean an extra expense for WWE of $12,000/year per $100,000 of wrestler compensation paid. These costs were directly transferred from the WWE Enterprise to the Plaintiffs. Indeed, the costs to Plaintiffs were worse since they had to insure individually, had to pay deductibles, were unlikely to obtain coverage at any price for pre-existing conditions (and therefore had to pay 100% out of pocket) and to the extent uninsured, had to pay health care providers the much higher rates applicable to uninsured individuals.  The transferred costs resulted in millions of dollars more profit for the WWE, increasing the share price of the shares held by VKM and the Trusts he controls, and the funds available to be distributed to him through dividends, bonuses, and benefit packages, all from property taken from the Plaintiffs by an intentional and fraudulent misclassification of Plaintiffs as "independent contractors".

c.      Next, but for the fraudulent misclassification of the Employee/Plaintiffs by the WWE acting through its controlling shareholder, VKM, the Plaintiffs would have been required to receive notices under the Occupational Safety and Health Act of 1970 (OSHA).  Such an OSHA notice informs employees that they have a _right_ to a safe workplace, to raise a health and safety concern with their employer and OSHA, and to report a work-related injury or illness _without_

---

[1] www.workerscompensationshop.com/insurance-states/connecticut.

4

being retaliated against.  The OSHA notice, 29 CFR.1903.2(a)(1), requires that an OSHA posted notice inform employees that they may request an OSHA inspection of a workplace premises if the employee believes that it is unsafe.  The OSHA notice further requires that employers must provide certain reports to OSHA about injuries sustained on the job, keep relevant records and "prominently display this poster in the workplace" – that being the poster providing notices to the employees concerning these rights. There are serious penalties, including criminal penalties, for failing to inform employees of their OSHA rights, which may not be circumvented by declaring employees as "independent contractors" by fiat and by ignoring the iron control exercised over them by VKM and the WWE at his direction.

The Congress of the United States found there was a need for OSHA and that its application provided necessary protections for American workers.

d.      With respect to Chronic Traumatic Encephalopathy ("CTE") and the suffering of other head injuries by the Plaintiffs as a consequence of their employment with the WWE, numerous reports of injuries and investigation of injuries should have been maintained by WWE but have not been because of the WWE's intentional OSHA violations.  Instead of receiving notice that retaliation against the Plaintiffs is illegal if they report an OSHA violation, the Plaintiffs, instead, were intentionally subjected to a coercive atmosphere where it was fully understood that any complaint about injuries would result in the immediate dismissal of the Plaintiff or a "ruination" of the character the Plaintiff played for the WWE, therefore, quickly resulting in loss of employment.  Accordingly, instead of receiving a notice that retaliation was illegal, the Plaintiffs were made to believe by the WWE that retaliation was certain and would be financially devastating.  By this mechanism, enforced through the fraudulently obtained Booking Contracts, the Plaintiffs were directly cost substantial amounts of money by having to perform their jobs in

an unprotected condition and by being retaliated against through firing and demotion if they made any protest – in direct contradiction to the rights guaranteed by OSHA, and to their substantial financial detriment.

     e.     In a similar manner, the Plaintiffs were deprived of rights under the Family Medical and Leave Act, which deprivation of rights led to direct financial loss for the Plaintiffs and gain to the WWE Enterprise and its controlling shareholder, VKM and his Trusts.  Once again, under federal law, notices were required to be given to the Plaintiffs of their rights under that Act but were not so given as a result of the direct policy of the WWE, created and enforced by its controlling shareholder, VKM:

> To meet the general notice requirements of the FMLA, covered employers must display a poster in plain view for all workers and applicants to see, notifying them of the FMLA provisions and providing information concerning how to file a complaint with the Wage and Hour Division.

*See* Fact Sheet 28D, Wage and Hour Division, United States Department of Labor.

     As a direct consequence of the deprivation of rights under the Family Medical and Leave Act, instead of being informed that no retaliation could be taken against them if they requested exercise of rights under the Family Medical and Leave Act, instead the Plaintiffs were caused to understand that any report of injuries and any requests for substantial time off to recuperate from serious injuries as provided by said Act, would result in their demotion and/or termination, or ruination of their "character".  The inability to properly recuperate from serious injuries had a direct consequence upon the physical health and well-being of each of the Plaintiffs, and resulted in direct monetary loss to each of the Plaintiffs through a reduction in their earning capacity, actual earnings, reduced length of career, and significantly increased insurance premiums.  Once again, these serious personal financial consequences to the Plaintiffs, and corresponding benefits to VKM and his Trusts were achieved through the fraudulent and coercive procurement and enforcement

of the unconscionable Booking Contracts the Plaintiffs were required to sign, which intentionally misclassified them as "Independent Contractors".

Section 107 of the FMLA provides for penalties for failure to honor the Act, and provides further that employees may recover all of the damages that they have sustained for violation of the Act, including reasonable Attorneys' fees. Very substantial damages are awarded for FMLA violations. *See Bissonnette v Highland Park Market, Inc*., No. 106014088S (Sup. Conn., Jan. 28, 2014).  29 USC 2615(a)(1) declares illegal any attempt of an employer to deny or interfere with an exercise of rights under the Act. Failure to provide the required notices and to fraudulently misclassify an employee is a deliberate, intentional, and actionable interference with rights under the FMLA, and tolls any statute of limitations argument.

Depriving employees of the rights afforded by the Act to recover from serious injuries, and then retaliating by reducing and/or totally eliminating their opportunity to be employed and earn income, as was done to the Plaintiffs hereunder, is specifically prohibited by the Act and deemed illegal employee retaliation.  Such actions are the daily activities of the WWE under the control of its majority voting shareholder VKM, individually and through his Trusts.

Individual employees or associates of the members of the association-in-fact, who are not themselves a defendant, were all acting within the scope of their employment, and as agents, respectively, of these members in carrying out the activities described herein.

f.     This Enterprise was engaged in, and its activities affected, interstate commerce within the meaning of RICO, 18 U.S.C SS 1962(c), in that it was engaged in the operation of procuring the services of the Plaintiffs through fraudulent and unconscionable "Booking Contracts" that intentionally deprived the Plaintiffs of money and property through these mechanisms and utilized the methods described herein, and integral and essential element of which

was the repeated use of the wires and mails of the United States to obtain the Booking Contracts and carry into effect the misclassification achieved thereby for the profit of VKM and his Trusts.

Defendant VKM, through his control of the RICO WWE Enterprise, unlawfully, knowingly, and intentionally orchestrated and participated, directly or indirectly, in the conduct of the Enterprise's affairs through a "pattern of racketeering activity', within the meaning of RICO, 18 U.S.C § 1961(5), in violation of RICO, 18 U.S.C. § 1962(c).

Defendant VKM and his Trusts engaged in "racketeering activity" within the meaning of 18 U.S.C § 1961(l) by engaging in acts that constitute a violation of one or both of the following statutes: 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C § 1343 (wire fraud).

Defendant VKM and other members of the Enterprise under his direction and control, each committed and/or aided and abetted the commission of significantly more than two of these predicate acts of "racketeering activity," and such acts are continuing, and threaten to continue, indefinitely. These predicate acts are chargeable and indictable under 18 U.S.C. § 1961(1).

Defendant VKM and other members of the Enterprise under his direction and control did, through the use of interstate mails (including courier services, within the meaning of 18 U.S.C. § 1341) and interstate wires (including the Internet, within the meaning of 18 U.S.C. § 1343), knowingly participate in misclassifying the Plaintiffs as "independent contractors" through the procurement and utilization of unconscionable Booking Contracts which were obtained from the Plaintiffs by fraud and by the deliberate creation of an atmosphere of coercion and intimidation in which the Plaintiffs were given to understand that questioning of VKM's dictatorial edicts would result in their termination and/or the substantial reduction in their income potential. Use of the wires and mails of the United States to procure the Booking Contracts and to carry their provisions into effect were and are necessary, integral, and essential parts of VKM's cunning scheme to

8

defraud the Plaintiffs, circumvent the application of numerous state and federal statutes, and deprive Plaintiffs of significant money and property for his own benefit, and that of his "Trusts".

The predicate acts perpetrated against Plaintiffs are commonplace to the scheme used by Defendant, VKM, to conduct the affairs of the RICO enterprise, and were not merely isolated or sporadic. These acts are, and were, related to one another and they pose a continuing threat of racketeering activity, as they have also done at least since the turn of the century, and before.

The acts of "racketeering activity" were and are related to each other by virtue of common participants, common victims (the Named Plaintiffs and other WWE wrestlers and referees), a common method of commission, and the common purpose and common result of defrauding the Plaintiffs and enriching Defendant VKM and his collaborators at the expense of the Plaintiffs while concealing the collaborators' activities. The fraudulent scheme has continued for not less than the last 20 years and necessarily effected interstate commerce.

The "pattern of racketeering activity" as alleged above is distinct from the Enterprise. The Enterprise, as an association-in-fact, was formed by Defendant VKM, facilitates Defendant VKM's profit opportunities, and enhance its other business. The Enterprise was taken "public" by the Defendant VKM in such a manner that he maintained his iron control, which he may exercise, according to his WWE SEC filings in a manner adverse to the interests of the non-voting shareholders.  This was accomplished by and through numerous mechanisms, not the least of which included the imposition of unconscionable Booking Contracts upon the Plaintiffs which fraudulently and knowingly misclassified them as "independent contractors" (when they were in fact employees of the WWE by any rational measure), the circumvention of state and federal statutes, knowingly advancing false medical information to the Plaintiffs about the

effects of cumulative neurological and other injuries sustained during their employment with the WWE, and the consequential monetary costs to the Plaintiffs of the racketeering activity.

The racketeering activity described herein was (and is) made possible by the existence of the WWE Enterprise, and the cost savings to WWE that result from the racketeering activity enable the Enterprise to profitably maintain its structure, and enhance the value of the shares of VKM and his family and associates, and the benefits and bonuses and dividends paid to him at the expense of Plaintiffs. For example, from 2003 to now there has been a 300% increase in the per share dividend payout of WWE. Defendant VKM, both individually and as Trustee of the named family trusts are persons within the meaning of 18 U.S.C. § 1961(3) and are legally distinct from the defined Enterprise.

Because of the geographic distribution of the WWE and the Plaintiffs, as well as numerous other wrestlers used by the WWE Enterprise, the Defendant VKM, individually and as Trustee necessarily made extensive use of interstate mails and wires within the framework of the RICO enterprise to, inter alia:

a)      Form and maintain the RICO enterprise;

b)      Distribute, procure and execute the Booking Contracts, associated literature, payments made under the Booking Contracts, Legends contracts, and fraudulent 1099 forms and fraudulent Quarterly tax returns and royalty payments, among other literature;

c)      Dividend checks payable to VKM, individually and as Trustee of the named Defendant Trusts, thus distributing profits from the Enterprise, dating back to 2003 and every year thereafter, likely through the use of the wires of the United States;

d)      All such documents, tax returns, dividend distributions, "miscellaneous income" distributions to the Plaintiffs (including royalties) were undertaken by the Defendant and his agents working at his direction and control for the purpose of executing the fraudulent scheme described herein. Which scheme is still ongoing. Please see Section 2(b)(iii), 5(a)(1-5) for additional specifics, incorporated herein.

2.   The identity of each Defendant and the alleged misconduct and basis of liability of each Defendant.

2a.      Identity of each Defendant:

World Wrestling Entertainment, Inc. (The RICO Enterprise) and Vincent K. McMahon, Individually, and as Trustee of the Vincent K. McMahon Irrevocable Trust U/T/A dtd. June 24, 2004, as Trustee of the Vincent K. McMahon 2008 Irrevocable Trust U/T/A dtd. December 23, 2008, and as Special Trustee of the Vincent K. McMahon 2013 Irrev. Trust U/A dtd. December 5, 2013, and as Trustee of Certain Other Unnamed McMahon Family Trusts, and as Controlling Shareholders of WWE.  It is anticipated that as discovery proceeds, additional "Trusts" will be discovered and may be added as Defendants through a Motion to Amend.

2b.      Identification of alleged misconduct:

Misconduct alleged against each Defendant, as set forth below, is identical. Defendant, Vincent K. McMahon ("VKM"), is the Chairman of the Board, CEO, and Controlling Shareholder of the RICO entity "World Wrestling Entertainment, Inc." ("WWE").  Defendant, VKM, exercises his control over the RICO Enterprise both individually and through a series of "Trusts" he has established, allegedly for estate planning purposes (according to SEC filings).  Collectively, VKM and the Trusts over which he has control, own the vast majority of voting stock of the RICO Enterprise "WWE", and have a chokehold upon its operations.  The basis of the liability are the cunning schemes detailed herein to deprive the Plaintiffs of their money and property.  The

Defendant VKM and the Trusts over which he has control acted in concert to produce the result and to obtain the Plaintiffs' money and enrich themselves at the expense of the Plaintiffs, through the misconduct.

The misconduct of VKM, as alleged in the Complaint, and as will be proven at trial, includes, but is not limited to the following:

(i)     Deliberate and intentional misclassification of the relationship of each of the Plaintiffs to the WWE as being one of an "Independent Contractor" instead of the relationship the Plaintiffs actually hold with respect to the WWE under any reasonable application of prior or existing law – that of traditional "employees". By every rational measure, the WWE controls every aspect of its wrestlers' performances – from what "holds" will be utilized, who will win the match, the entire "persona" of the wrestler, the outcome of the match, the time, place and duration of the work, the costumes to be worn – every aspect of the scripted matches. The characterization of the Plaintiffs as "independent contractors" by the WWE is a complete fiction which satisfies no legal standard except unconscionability.

(ii)     The coercion (and unconscionable advantage over) of each of the Plaintiffs into signing "Booking Contracts", examples of which are set forth as Exhibits to the Complaint (and others herein), which "Booking Contracts" sought to deprive the Plaintiffs of valuable rights (with direct and material consequences to their money and property) available under state and federal law which include, among others:

a.     The right to a safe work environment as guaranteed by the Occupational Safety and Health Act. The Occupational Safety and Health Act requires the posting of notices to employees informing them of the rights available under the Act, further requires the

reporting of significant injuries to OSHA, and allows OSHA to intervene to enforce regulations requiring a safe working environment.

    b.  For example, a regulation has been issued under OSHA, which has been in existence during the times alleged in the Complaint that the injuries to the Plaintiffs took place, to the effect that, where it is likely that a worker will sustain a blow to the head, that protective headgear must be worn. The Plaintiffs were not made aware of this regulation by their employer as required, OSHA was not made aware of the numerous injuries suffered by the Plaintiffs during the course of their employment with the WWE, and therefore, never intervened to enforce the headgear regulation and other safe work regulations, thus resulting in substantial physical injury to each of the Plaintiffs and loss of money and property through significantly reduced income and substantially increased direct costs of medical expenses and medical insurance, and therefore directly transferring the costs to increased profits to the Defendants.

    (iii)  Next, by deliberately and intentionally misclassifying the Plaintiffs as "Independent Contractors", the RICO Enterprise, at the direction of its Controlling Shareholder and Chairman and CEO, VKM, deprived each of the Plaintiffs of the Employer's contribution to Social Security (FICA) taxes, and for the Employer's contribution to Medicare taxes and took that money for itself. Specific examples are set forth in Paragraph 415 of the Complaint, on Page 149 thereof. The specific calculation of Damages for each Plaintiff varies in accordance with the income of that Plaintiff but in all cases, the rubric of calculation is the same and set by statute. FICA (aka "Social Security taxes") for an "Independent Contractor" for 2007 was 15.3% on the first 92.35% of the first $97,500 of income. Medicaid tax on an Independent Contractor was 2.9% unabated on the entire income, including any income over $97,500. Had the Plaintiffs been properly classified as Employees, they would have paid only 6.2% FICA taxes on their statutory

income and 1.45% of the Medicaid tax.  The balance of these taxes owed would have been and are currently the responsibility of the RICO Enterprise, WWE, and concurrently, of VKM, Individually, and as Trustee, as he has directed and controlled the RICO Enterprise for his personal profit and gain (and that of his family) to pay a lower tax amount than was required by law, and thus shift the tax burden to the Plaintiffs who were duped into believing that they were "Independent Contractors", leaving more for VKM's lucrative employment contract, expense accounts, the capital appreciation of his stock, and increasing dividend payments.

For example, Plaintiffs' research shows that the typical WWE wrestler would earn an average of $120,000+ over the last ten years, during an average career of 3+ years.  Taking 50 Plaintiffs as a sample for calculations, and assuming a conservative basis for FICA of $80,000/year (and $120,000 for Medicare), the WWE easily saves hundreds of thousands of dollars each year through the misclassification, which is also the extra cost imposed upon the Plaintiffs, each and every instance of which constitutes a fraudulent taking of money from the Plaintiffs for the use and enrichment of the Enterprise and VKM, individually and as Trustee.

3.  <u>The identity of the alleged wrongdoers, other than the defendants listed in response to paragraph 2, and the alleged misconduct of each wrongdoer.</u>

The identity of <u>additional</u> wrongdoers, being persons who assisted the Defendants referenced in Paragraph 2, in accomplishing the objects of the WWE Enterprise with respect to causing monetary and property damage to the Plaintiffs are unknown at this time but will be developed through Discovery.  As alleged in the Complaint, the WWE Enterprise is a singularly insular organization in which absolute loyalty is expected to the Chairman and CEO, VKM, who is the primary wrongdoer.  The nature of the "Enterprise" and the RICO violations are detailed in the Complaint and in this document.  The name of each and every party that knowingly assisted

VKM in carrying out the object of the Enterprise cannot be known at this time without Discovery, as it is uniquely known to the highly insular WWE.

4.   The identity of the alleged victims and the manner in which each victim was allegedly injured.

4a.   The identity of the alleged victims consists of each of the named Plaintiffs as follows:

JOSEPH M. LAURINAITIS, a.k.a. Road Warrior Animal,
JIMMY "SUPERFLY" SNUKA, by and through his guardian, Carole Snuka,
PAUL ORDNDORFF, a.k.a. Mr. Wonderful,
SALAVADOR GUERRERO IV, a.k.a. Chavo Guerrero, Jr.,
CHAVO GUERRERO, SR., a.k.a. Chavo Classic,
BRYAN EMMETT CLARK, JR., a.k.a. Adam Bomb,
ANTHONY NORRIS, a.k.a. Ahmed Johnson,
JAMES HARRIS, a.k.a. Kamala,
DAVE HEBNER,
EARL HEBNER,
CHRIS PALLIES, a.k.a. King Kong Bundy,
KEN PATERA,
TERRY MICHAEL BRUNK, a.k.a. Sabu,
BARRY DARSOW, a.k.a. Smash,
BILL EADIE a.k.a. Ax,
JOHN NORD, a.k.a. The Bezerker,
JONATHAN HUGGER a.k.a. Johnny The Bull,
JAMES BRUNZELL, a.k.a. Jumpin' Jim,
SUSAN GREEN, a.k.a. Sue Green,
ANGELO MOSCA, a.k.a. King Kong Mosca,
JAMES MANLEY, a.k.a. Jim Powers,
MICHAEL "MIKE" ENOS,
BRUCE "BUTCH" REED, a.k.a. The Natural,
CARLENE B. MOORE-BEGNAUD, a.k.a. Jazz,
SYLVAIN GRENIER,
OMAR MIJARES a.k.a. Omar Atlas,
DON LEO HEATON, a.k.a. Don Leo Jonathan,
TROY MARTIN, a.k.a. Shane Douglas,
MARC COPANI, a.k.a. Muhammad Hassan,
MARK CANTERBURY, a.k.a. Henry Godwin,
VICTORIA OTIS, a.k.a. Princess Victoria,
JUDY HARDEE a.k.a. Judy Martin,
MARK JINDRAK,
BERNARD KNIGHTON as Personal Representative of the Brian Knighton, a.k.a. Axl Rotten, Estate,
MARTY JANNETTY,

15

JON HEIDENREICH,
TERRY SZOPINSKI, a.k.a. The Warlord,
SIONE HAVEA VAILAHI, a.k.a. The Barbarian,
LARRY OLIVER, a.k.a. The Crippler,
BOBBI BILLIARD,
TIMOTHY SMITH, a.k.a. Rex King,
TRACY SMOTHERS, a.k.a. Freddie Joe Floyd,
MICHAEL R HALAC, a.k.a. Mantaur,
RICK JONES, a.k.a. Black Bart,
KEN JOHNSON, a.k.a. Slick,
GEORGE GRAY, a.k.a. One Man Gang,
FERRIN JESSE BARR, a.k.a. JJ Funk,
LOU MARCONI,
ROD PRICE,
DONALD DRIGGERS,
RODNEY BEGNAUD, a.k.a. Rodney Mack,
RONALD SCOTT HEARD, a.k.a. Outlaw Ron Bass, and
BORIS ZHUKOV.

4b.     The manner in which each victim was allegedly injured:

The manner in which each victim was injured is substantially identical in each material

respect.  First, there is the "misclassification" of the Plaintiffs as "Independent Contractors" of the

Defendant Enterprise WWE, when in fact, they are by all legal measures, Employees, and entitled

to the monetary rights of employees, and the significant deprivation of money and property which

took place as the natural and proximate result of that misclassification, as detailed herein.  The

method and basis of the misclassification is particularly set forth in Count I of the Complaint,

consisting of Paragraphs 324 through 373, and herein.  The "misclassification" was achieved

through the WWE Enterprise under the direction and control of its Chairman, CEO and Controlling

Shareholder, VKM.  VKM, deliberately and intentionally created a coercive and intimidating

atmosphere in which the Plaintiffs knew that if they asked for any meaningful representation by

an attorney with respect to negotiating the "Booking Contracts" they were required to sign, that

they would be terminated.  Knowledge of the intransience of VKM that he "hated lawyers" (of

course, other than his own lawyers) was spread through the wrestling community.  Few, if any, of

the Plaintiffs had the requisite education, training, background, or experience to even begin to comprehend the legal differences between the "Independent Contractor" and an "Employee", and the monetary damage they would suffer through the misclassification.

In addition, the Court is respectfully directed to Section 5, hereof.

5. A description of the pattern of racketeering activity of collection of unlawful debts alleged for each RICO claim, which shall include the following information.

   a. The alleged predicate acts and the specific statutes which were allegedly violated:

Mail fraud in violation of 18 USC § 1346 and wire fraud in violation of 18 USC § 1343.

   1. Procurement of Booking Contracts from each of the Plaintiffs under the guidance and control of Defendant, Vincent K. McMahon.  The Contracts were obtained from the Plaintiffs by the Defendant, VKM, either acting individually or through his straws, but always in accordance with his direction and control.  Booking Contracts were typically three years in length and were obtained through the use of the mails and wires of the United States.  Specific examples of Booking Contracts and later versions of Booking Contracts called "Contractor Nostalgia Agreements" are attached to the Complaint as Exhibits A through E, which are detailed as follows:

> Exhibit A:  Booking Contract dated July 26, 2001, Parties: WWE & Salvador Guerrero IV;
>
> Exhibit B:  Booking Contract dated June 3, 2004, Parties: WWE & Salvador Guerrero IV;
>
> Exhibit C:  Booking Contract dated April 7, 2007, Parties: WWE & Nelson Frazier;
>
> Exhibit D:  Booking Contract dated March 1, 2010, Parties: WWE & Salvador Guerrero IV;
>
> Exhibit E:  Contractor Nostalgia Agreement dated October 13, 2015, Parties: WWE to Bryan Clark (Exhibit not signed);
>
> Item F:  Booking Contract dated 5/26/03.  Parties:  WWE & R. Goguen, Doc 1-2, case 3:16-CV-00542; and

Item G:  Doc 103-4, Case 3:15-CV-01074.  Admission by WWE of Booking Contract with Nelson Frazier dated 11/7/2007, terminated by mailing from Connecticut to Arkansas from WWE to Nelson Frazier on 8/11/2008.

Item I: WWE Booking Contract signed by WWE in CT with Matthew R. Weise of Glendale, Arizona, and signed in Arizona by him dated 4/23/04, authenticated by Affidavit of WWE General Counsel James Langham in USDC-Central California District Case # 2:15-cv-02662.

Item J: WWE Booking Contract with Ryan Sakoda of California, dated 19 May, 2004, authenticated by Affidavit of WWE General Counsel James Langham in USDC-Central District Case # 2:15-cv-02662.

Item K: WWE Booking Contract with Russ McCullough of Louisville, Kentucky, dated 28 August, 2000, authenticated by Affidavit of WWE General Counsel James Langham in USDC-Central California District Case # 2:15-cv-02662.

In addition to the above ten specific Booking Contracts, the Plaintiff represents that there were not less than fifty more Booking Contracts of the same tenor, involving the Plaintiffs.  Each and every Booking Contract  involved violations of 18 USC §§ 1343 and 1346.  For example, Exhibit A to the Complaint shows that the Booking Contract was mailed to Plaintiff, Salvador Guerrero by Edward L. Kaufman on behalf of the WWE on July 27, 2001, which copy was executed by the WWE.

Exhibit B to the Complaint shows a Booking Contract to Salvador  Guerrero sent through the courier services of the United States on September 12, 2005 (Federal Express), which Contract was executed on behalf of the WWE by John Laurinaitis, Vice President of Talent Relations, WWE.  The document was notarized in the State of California on behalf of the wrestler and notarized in the State of Connecticut on behalf of the WWE.

Exhibit C to the Complaint is another Booking Contract dated April 7, 2007, between wrestler Nelson Frazier and signed on behalf of the WWE by John Laurinaitis.

Exhibit D to the Complaint is another Booking Contract mailed from Connecticut to California on or about March 3, 2010, and executed on March 1, 2010 by wrestler, Salvador Guerrero, and John Laurinaitis on behalf of the WWE.  And so forth, please see specific examples.

There are dozens and dozens of such contracts executed by the different Plaintiffs at different times over the last 20 years, in many instances, renewed by the Plaintiffs after each expiration of the prior contract, all involving the use of the wires and mails of the United States as an integral part of the procurement, delivery of these documents, and the execution of their terms. The use of the mails and courier facilitated the scheme of WWE to fail to negotiate the contracts and to fail to answer questions that a face-to-face meeting might result in.  Mail reinforced the "take it or leave it" atmosphere that assisted the cunning scheme of the Defendants.  The exact dates of mailing of each and every Booking Contract to each of the Plaintiffs would be contained in the cover letters sent by the Defendant WWE at the direction and control of VKM, and is only available through discovery.  The existence of these contracts and their mailing is not subject to question.  *See* Declaration of James W. Langham, General Counsel to WWE, dated 5/6/2015.

From at least 1/1/2004 on (and most cases sooner), WWE required all of its wrestlers to execute Booking Contracts of the type which are referenced herein, which intentionally misclassified them as independent contractors.  In a case filed in this Court, WWE General Counsel James W. Langham discussed the requirements of WWE "Booking Contracts" dating back to 1991, managed by a small group of executives all residing in Connecticut and working at WWE headquarters.  *See* Langham Declaration, dated May 6, 2015.

Exhibit G to the Complaint is a typical example of the mailing of  1099 Forms.   In this case, for Bruce Reed of the State of Montana, sent to him by the WWE.  This so-called

"accounting" shows that the WWE earned $58,809.82 in royalties upon activities for which they paid Bruce Reed $69.98.

2. Another such documents is included as an Exhibit to the Complaint being a summary of "royalty earnings" for the 1st quarter of 2016 to James Harris, showing payments to the WWE of $78,338.42 against a so-called "royalty" paid to the wrestler of $98.01.

An additional 1099 Form is included for the year 2005, believed to have been mailed to Mark Copani in Los Angeles, California, during January of 2006, apparently showing "non-employee compensation" over $300,000 (Box 7). No FICA or Medicare contributions were made by the WWE, as required, on behalf of Mark Copani for the year 2005.

3. Another attached Exhibit to the Complaint is a 2010 Form 1099 mailed to Salvador Guerrero in Los Angeles, California by the WWE in January of 2011. Box 7 of this Exhibit shows non-employee compensation in the amount of $191,843.09. Two other Form 1099's were sent to Salvador Guerrero in January of 2011 by the WWE referencing non-employee compensation, respectively, of $44,543.09 and $3,000.

Two additional 1099 Forms were sent to Salvador Guerrero by the WWE in January of 2011 referencing, respectively, $1,850 of non-employee compensation and $1,000 of non-employee compensation. Five additional 1099 Forms were mailed to Salvador Guerrero in January of 2011, also by the WWE.

In January of 2016, a Form 1099 for the year 2015 was mailed to Mark Jindrak by the WWE referencing alleged royalty income.

4. On March 3, 2010, Salvador Guerrero was mailed from Stamford, Connecticut, a Booking Contract to Las Flores, California, which Booking Contract is dated April 5, 2010, and executed by the WWE.

5. By letter dated July 23, 2001, Edward L. Kaufman, representing the WWE (then called the WWFE), being Vice President and General Counsel of the WWE, stated that "WWE has decided that all of its talent should have WWFE Booking Contracts".  Accordingly, from at least that date until the current time, WWE has booked talent, particularly the Plaintiffs, through written Booking Contracts.  The use of the wires and mails of the United States, as elsewhere described herein, was an integral part of obtaining those Booking Contracts.

b.   The dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts:

Please refer to Sections 1-7, hereof.

c.   If the RICO claim is based on the predicate offenses of wire fraud, mail fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b).  The time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made shall be identified:

Please refer to Sections 1-7, hereof.

d.   Whether there has been a criminal conviction for violation of the predicate acts:

No.

e.   Whether civil litigation has resulted in a judgment in regard to the predicate acts:

No.

f.   The manner in which the predicate acts form a "pattern of racketeering activity":

The use of the mails and wires of the United States formed an essential and necessary element of carrying into action the cunning scheme of the Defendant.  The mails, wires, and courier services of the United States were regularly used to send to the Plaintiffs the "Booking Contracts" with the direction that the Booking Contract should be signed and mailed back or sent back by wire or interstate courier.  Generally speaking, a "Booking Contract", such as is set forth in Exhibit B to the Complaint, lasted for a term of three years (see Section 6 of Exhibit B to the Complaint).

The Booking Contract which is Exhibit B, was executed by World Wrestling Entertainment in the County of Fairfield Connecticut on June 3, 2004.  Although the Contract states that Salvatore Guerrero, IV, resided in California, he signed the Contract in Toronto, Canada on June 1, 2004. On December 12, 2005, by Federal Express, an Amendment to the Contract was sent to Mr. Guerrero by WWE to Mr. Guerrero's address in California from WWE's office in Stamford, Connecticut, executed by Mr. Guerrero in California and then returned to the WWE.

Based upon interviews, most of the wrestlers will testify that the existence and requirements of the Booking Contracts were discussed from time to time with WWE executives through the use of the telephone system.  Further, the telephone system was widely used to contact the wrestlers for the purpose of moving them from place to place   to   engage   in   the   next performance and to make travel arrangements to attend performances, all as tightly controlled by the WWE through mechanisms and under protocols established by CEO, Vincent K. McMahon and as further evidence of their status as employees.

Accordingly, there was both widespread use of the mails, wires and courier services of the United States as an essential ingredient not only in procuring the unconscionable Booking Contracts which misclassified the Plaintiffs as "Independent Contractors" but also then in executing the obligations of and payments to the Plaintiffs under the Contracts as they were routinely manipulated by the WWE in furtherance of their conspiracy to deprive the Plaintiffs of money and enrich the RICO Enterprise and VKM.

Without detailing here each and every use of the mails and wires of the United States, it is reasonably estimated that the procurement of Booking Contracts for the Named Plaintiffs involved hundreds of uses of the mails extending over a period of twenty years, all as part of the same interrelated scheme with a common objective.  It is further reasonably estimated that the telephone

22

system of the United States was used dozens of times with respect to each and every Plaintiff to procure the execution of the Booking Contracts once obtained.  It is further reasonably estimated, based upon statutory requirements, that false and fraudulent 1099 Forms were sent by the WWE under the direction and control of its Chairman, Vincent K. McMahon, to each wrestler for each year they either worked under a booking contract or without a contract.

Fraudulently classifying the Plaintiffs as "Independent Contractors" and, therefore, depriving the Plaintiffs of the required monetary contribution of the Defendant Enterprise to the Internal Revenue Service, thereby increased the amount each Plaintiff had to pay the Internal Revenue Service which each Plaintiff would not have had to pay if each Plaintiff had been properly characterized as an employee.

It is further stated that since 2003 dividends have been paid to VKM, individually and as Trustee of the Enterprise, which dividends have both enhanced the value of the Capital Stock of the entire Enterprise, including shares held by VKM, individually and as Trustee, which dividends were derived from the profits of the Enterprise as such profits have been enhanced by the exploitation of the Plaintiffs through the RICO activity described herein.

  g. <u>Whether the alleged predicate acts relate to each other as part of a common plan, and if so, a detailed description of the common plan:</u>

It was the "common plan" to procure the services of young men who desired to earn money through utilization of their athletic skills and who would be lured by the potential of "fame and fortune" to sign unconscionable "Booking Contracts" with the WWE and then to utilize those Contracts to basically control every aspect of the "professional" lives of those who signed them, particularly the Plaintiffs.  Typically, the common scheme involved recruiting young men that the Defendant knew or should have known were generally unsophisticated and uneducated in legal matters, who were generally not aware of their legal rights, and who could be counted upon to be

coerced into not utilizing the services of competent legal counsel.  The coercion and intimidation of the wrestlers, particularly the Plaintiffs, was achieved by the general dispersion of certain knowledge in the business.  Such knowledge included but was not limited to the following:

(a).    Wrestlers did what they were told and never asked questions;

(b).    Asking questions could get you into trouble and result in your "character" being treated unfavorably and ultimately or immediately disposed of;

(c).    Knowing that Mr. McMahon was in charge of everything and it was never a good idea to question anything he said to you or asked of you.  The knowledge was spread throughout the wrestling community that if one complained too much about being injured, your character would be destroyed by the engineering of unfavorable outcomes in matches or simply dispensed with;

(d).    Through the deliberate and intentional misclassification of the Plaintiffs, they were deprived of the safety regulations of OSHA, and of the Family Medical and Leave Act, as well as the rights and compensations that would have been available to them under local state laws such as the Workers' Compensation laws of most states.  By not reporting injuries to OSHA as would have been required had the Plaintiffs been properly classified as employees, WWE saved much money at the expense of the Plaintiffs, who consequently lost earning capacity and were required to pay for the medical costs of their own injuries, including increased premiums upon health insurance due to those injuries, and further because the cost of those injuries would not be covered by applicable state Workers' Compensation provisions through insurance which otherwise would have been required to have been provided by the WWE Enterprise;

(e).    To thereby enhance the profits of the enterprise and the value of the Capital stock in the hands of Defendant VKM by directly transferring money and property which should have

24

been paid by and on behalf of the Enterprise for the benefit of the Plaintiffs, but was instead confiscated from the Plaintiffs and diverted to the benefit of the Enterprise and its controlling shareholder VKM.

6. A detailed description of the alleged Enterprise for each RICO claim, which shall include:

    a. The names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the Enterprise:

The current "Enterprise" is the Delaware corporation known as the World Wrestling Enterprise, Inc., based in Connecticut.

    b. The structure, purpose, function and course of conduct of the Enterprise:

The Structure of the Enterprise is that of a Delaware Corporation. There are two classes of stock. Nearly all "voting stock" is concentrated in the family of VKM, individually, and through his "Trusts". Chairman and Chief Executive Officer, and further its controlling shareholder, individually, and as Trustee of the Trusts, named as Defendants is Vincent K. McMahon, an individual who resides in Connecticut.

The ostensible purpose of the Enterprise is to present entertainment to the public, both across the 50 states of the United States, and numerous foreign countries, in the form of "wrestling matches" which involve individuals such as the Plaintiffs involved in dramatic episodes which include both actual and simulated violence.

The "matches" are carefully choreographed as to participants, action, time, place, script, wrestling moves and holds used, intervention by "outside" participants (other WWE Employees), story line, and outcome. Every material element of the match is tightly controlled by the WWE Enterprise under the direction of VKM.

The course of conduct of the Enterprise first involved making itself a virtual monopoly as described in the Complaint, by purchasing rivals. It carried out its subjugation and coercion of

individual wrestlers by methods described herein in the Complaint, which in sum, amount to VKM through his associates and directly, distributing within the community of wrestlers that anyone who wanted a career in wrestling would sign the contracts his company presented, that there would be no meaningful negotiation of those contracts, and that anyone unwilling to slavishly adhere to the directives given to them with respect to the staged  wrestling matches, would be eliminated from WWE employment. The same fate awaited any wrestler that protested his working conditions, payment amounts, or questioned having to work while injured. All wrestlers, including the Plaintiffs quickly learned that one did not question directives from Defendant McMahon and his associates.

      c.   <u>Whether any defendants are employees, officers or directors of the alleged Enterprise</u>:

The Defendant, Vincent K. McMahon, is an employee, officer, and director of the alleged Enterprise, being Chairman of the Board and holding an executed Employment Contract with the WWE.  He is also the controlling shareholder through his ownership of shares, individually and through various trusts he has established, allegedly for "estate planning" purposes, as set forth in filings with the Securities and Exchange Commission.

      d.   <u>Whether any defendants are associated with the alleged Enterprise</u>:

Defendant VKM is associated with the Enterprise in that he is a chief officer, Chairman of the Board of Directors, and controls the voting stock of the Enterprise through his Trusts and personally owned stock.

      e.   <u>Whether plaintiff contends that the defendants are individuals or entities separate from the alleged Enterprise, or that the defendants are the Enterprise itself, or members of the Enterprise</u>:

The Defendants are individuals and entities (VKM's family trusts) separate from the Enterprise, but VKM exercises effective control over the Enterprise, which, according to his SEC

filings, may include control adverse to the non-voting shareholders who trade their stock on the New York Stock Exchange.

    f.   <u>If any defendants are alleged to be the Enterprise itself, or members of the Enterprise, an explanation as to whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.</u>

Not applicable, except that VKM is an officer and controlling shareholder and to that extent, a perpetrator.

   7.   <u>Whether Plaintiffs contend that the pattern or racketeering activity and the Enterprise are separate or have merged into one entity.</u>

The acts of "racketeering activity" were and are related to each other by virtue of common participants, common victims (the Named Plaintiffs and other wrestlers), a common method of commission, and the common purpose and common result of defrauding the Plaintiffs and enriching defendant VKM and his collaborators at the expense of the Named Plaintiffs while concealing the collaborators' activities. The fraudulent scheme has continued since the inception of the Enterprise, and threatens to continue unless enjoined by this action. The pattern of racketeering is conducted through the Enterprise, but is under the direction and control of Defendant VKM, who, according to his own testimony and Employment Contract, is involved in every aspect of structuring and executing the business of the Enterprise.

   8.   <u>The alleged relationship between the activities of the Enterprise and the pattern of racketeering activity, including a description of the manner in which the racketeering activity differs, if at all, from the usual and daily activities of the Enterprise.</u>

The Court is respectfully referred to Sections 1-7 above.  Additionally, the daily activities of the Enterprise involve finding, recruiting and training, talent, booking stadiums and other venues in which to conduct the matches, arranging contracts with television and cable media to broadcast the matches, running print media to bring publicity to the matches, writing story lines, devising characters, and writing choreographs of the matches, and other activities typical to a $500

million+ a year corporation such as finding and renting office space, clerical employees, procuring office supplies, making travel arrangements for employees, and accounting for income and expenses.

9. The benefits, if any, the alleged Enterprise receives or has received from the alleged pattern of racketeering activity.

The Court is respectfully referred to Sections 1-7 above in which the monetary benefits to the Enterprise and the other Defendants is more specifically detailed.

9a.     The Enterprise has been able to avoid payment of the Employer's share of payroll FICA taxes and Medicare taxes which it should have paid on behalf of its employees, the Plaintiffs. A sample calculation of how this damage to the Plaintiffs and benefit to the "Enterprise" is set forth in Paragraphs 415 through 421 of the Complaint and in Section 2 hereof.  Basically, an employer must pay half of the FICA taxes and Medicare taxes on money earned by an employee up to a statutory amount which has varied from time to time over the years with respect to FICA taxes, but which is on the entire amount of employment compensation with respect to the Medicare taxes.

An exact calculation of the amount of money the Plaintiffs have been deprived of through their misclassification as "Independent Contractors" will require Discovery from the Defendants because the Defendants are in the unique position of possessing the payroll records of the Plaintiffs many of which the Plaintiffs no longer have.  Examples of "1099's" which form an integral part of the scheme to defraud the Plaintiffs and were mailed to the Plaintiffs and sent over the wires of the United States to the Internal Revenue Service, are attached to the Complaint as Exhibits.  It is a reasonable estimate that substantially in excess of $1,000,000 was taken from the Plaintiffs (and other wrestlers who are not plaintiffs in this action, but nevertheless, victims of the "Enterprise").

Accordingly, the Enterprise has benefited dollar for dollar to the extent it has misclassified the Plaintiffs and thus totally avoided payment of the FICA taxes and Medicare taxes it is, otherwise, required to pay by law.  This represents direct monetary damage to the Plaintiffs.

9b.     Likewise, by misclassifying the Plaintiffs, the Defendants have totally avoided the cost of Workers Compensation insurance, reasonably estimated in this case to be about 12% of payroll, as well as the costs of OSHA and FMLA compliance.

10. The effect of the activities of the Enterprise on interstate or foreign commerce.  If the complaint alleges a violation of 18 U.S.C. Sec. 1962(a), provide the following information:

a.  The identity of the individuals(s) who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt:

Not applicable at this time.

b.  The use or investment of such income:

Not applicable at this time.

11. If the complaint alleges a violation of 18 U.S.C. Sec 1962(b), describe in   detail   the acquisition or maintenance of any interest in or control of the alleged Enterprise.

Not applicable at this time.

12. If the complaint alleges a violation of 18 U.S.C. Sec. 1962(c), provide the  following information:

a.  The individuals who are employed by or associated with the Enterprise:

Vincent K. McMahon is the Defendant named here.  He also employs numerous family members consisting of his children, his wife, and their spouses.  Vincent K. McMahon has also established a series of family Trusts in which he, his immediate family, and attorneys are the Trustees, which collectively control the Enterprise through control, according to public filings, of over 75% of the voting stock of the Enterprise WWE.

b.  Whether the same entity is both the liable "person" and the "Enterprise" under Sec. 1962(c):

No.

13. If the complaint alleges a violation of 18 U.S.C. Sec. 1962(d), describe in   detail   the alleged conspiracy.

At the current time, the Complaint is directed at VKM individually and as Trustee of his various family trusts, the named Defendants other than the WWE Enterprise. The names and Trustees of all of the VKM family trusts are not readily available among the thousands of documents filed with the SEC concerning the control of WWE stock. As discovery in this matter develops and specific questions may be asked, amendments to the Complaint may be sought to add additional defendants as the relevant facts are disclosed.

14. The alleged injury to business or property.

The Court is respectfully referred to Sections 1-7 above.

15. The direct causal relationship between the alleged injury and the violation of the RICO statute.

The Court is respectfully referred to Sections 1-7 above.

16. The damages sustained for which each defendant is allegedly liable.

The Court is respectfully referred to Sections 1-7 above.

17. A description of other federal causes of action alleged in the complaint, if any, and citation to the relevant statutes.

The Court is respectfully referred to Sections 1-2 above.

18. A description of all pendent state claims alleged in the complaint, if any.

The pendent Connecticut claims alleged in the Complaint are Fraudulent Concealment, Fraud, Negligent Misrepresentation, Negligent Hiring, Negligent Retention, and Civil Conspiracy relating to the alleged Fraudulent Concealment, Accounting and Disgorgement, and Unjust Enrichment.

Plaintiffs' potential and actual in-ring injuries could not have been discovered by Plaintiffs due to the Defendants' fraudulent concealment and fraud. Despite reasonable diligence by Plaintiffs to discover the cause of their ailments, the Plaintiffs relied on the Defendants' ongoing conduct of reaching out to retired wrestlers, offering them medical services, and making public statements regarding the health and safety of the Plaintiffs. Despite the Defendants' ever-growing knowledge beginning as early as 1960, and their ongoing duty to inform Plaintiffs of their injuries and the potential future risks associated with the repeated trauma sustained in-ring at WWE, the Defendants withheld and covered up this information and through a fraudulent scheme prevented the Plaintiffs from seeking treatment provided for under numerous statutes.

The Defendants' failure to use due care in obtaining and communicating this essential information to the Plaintiffs who were reasonably expected to rely on the Defendants' conveyance of health and safety information relating to in-ring performances and injuries has resulted in Plaintiffs' negligent misrepresentation claim. Such misrepresentations included public statements by WWE employees criticizing legitimate scientific studies explaining the dangers and risks of head trauma like that sustained by the Plaintiffs.

The Defendants profited from this behavior, and further facilitated it through silence and misrepresentation by affirmatively creating reliance by the Plaintiffs on the Defendants' knowledge and expertise. The Defendants hired individuals and organizations intended to influence the Plaintiffs' decisions to encourage continued wrestling performances despite sustaining serious head impacts where sound medical science would have required treatment and rest from potential further injuries. The Defendants have financially supported the Concussion Legacy Institute despite the failure of the Institute to study wrestler brains and encouraged this

misrepresentation knowing the Plaintiffs believed they did not suffer from the same injuries professional football players do because of the lack of available studies on wrestlers' brain injuries.

The Defendants knew that the necessary information was not being made available to the Plaintiffs, and through the Talent Wellness Program, the Talent Relations Department, and the numerous other departments engaged in wrestler contact and relations, provided insufficient and incompetent judgment, information, opinions, and treatment.  Aware of this information, and in an effort to delay litigation and maintain corporate profits, the Defendants continued to attack any medical studies which could have made the Plaintiffs aware of their injuries and should have hired competent employees who could have prevented further injuries.

The concerted effort by the Defendants to maintain this fraudulent façade included numerous executives of WWE, including the Named Defendant, Vincent K. McMahon.  The conspiracy to defraud the Plaintiffs through fraudulent concealment was an active element of numerous WWE departments, including Talent Relations which collected and compiled injury reports and maintained constant contact with the Plaintiffs throughout their employment and often beyond, the Talent Wellness Program designed to foster the Plaintiffs' reliance on the Defendants' expertise and provide necessary information to the Plaintiffs regarding their health and safety, the substance abuse program initiated by the Defendants to offer drug rehabilitation for past employees which further encouraged and facilitated the ongoing reliance on WWE regarding the Plaintiffs' health and safety after retirement, and the public statements made by WWE regarding Chris Benoit and the study of CTE, generally.

As a result of the Defendants' fraud and negligence and the conspiracy to promote corporate profit through fraud, concealment, and misrepresentation, the Plaintiffs have suffered long-term, progressive, and latent brain injuries which they seek full compensation for under

Connecticut and federal law.  This includes equal rights to the ownership of their own intellectual property, and a proper accounting to their fair share of the profits earned, together with interest. Such profits should be disgorged by the WWE and VKM as the Defendants have willfully and consciously engaged in a massive and profitable scheme, pattern, and practice of misrepresenting Plaintiffs' employment, fraudulently concealing and omitting the long-term injuries the Plaintiffs have suffered, and failing to uphold their duty to provide Plaintiffs with necessary care and treatment, expressly designed to enrich the Defendants which has resulted in the Defendants' substantial benefit, and which in good conscience they should not be able to keep.

19.    <u>Any additional information plaintiff feels would be helpful to the Court in processing the RICO claim.</u>

a.    Terry McAuliffe (governor of Virginia) issued Executive Order 24 on August 14, 2014, entitled "Establishing an Inter-Agency Task Force on Worker Misclassification and Payroll Fraud":  The misclassification of employees as "independent contractors" undermines businesses that follow the law, deprives the Commonwealth of millions of dollars in tax revenues, and prevents workers from receiving legal protections and benefits."

b.    From the United States Department of Labor website:

"The misclassification of employees as independent contractors presents one of the most serious problems facing affected workers, employers and the entire economy. Misclassified employees often are denied access to critical benefits and protections to which they are entitled, such as the minimum wage, overtime compensation, family and medical leave, unemployment insurance, and safe workplaces. Employee misclassification generates substantial losses to the federal government and state governments in the form of lower tax revenues, as well as to state unemployment insurance and workers' compensation funds. It hurts taxpayers and undermines the economy."

*See* https://www.dol.gov/whd/workers/misclassification.

c.    *See Employees v Independent Contractors And Professional Wrestling*:  "How the WWE is Taking a Folding Chair to the Basic Tenants of Employment Law", 53 U. Louisville Law Review 143.

d.     It is expected that the WWE acting through its Chairman, VKM, will advance a contrived defense to the "misclassification" such as, but not limited to, a "Revenue Ruling", or similar.  However, such contrivances are not worth the paper written upon when obtained through the intentional misrepresentation of the degree of control exercised over the wrestlers by WWE, and in fact, depending upon the circumstances revealed through discovery, would constitute yet another use of the mails and/or wires of the United States to further his RICO activities.

Dated: August 8, 2016.

Respectfully Submitted,

/s/ *Brenden P. Leydon*
Brenden P. Leydon, Esq.
TOOHER WOCL & LEYDON LLC
80 4th Street
Stamford, Connecticut 06905
Telephone: (203) 517-0456
Facsimile: 203-324-1407
BLeydon@tooherwocl.com

Konstantine W. Kyros, Esq.
KYROS LAW OFFICES
17 Miles Road
Hingham, MA 02043
Telephone: (800) 934-2921
Facsimile: 617-583-1905
kon@kyroslaw.com

S. James Boumil, Esq.
BOUMIL LAW OFFICES
120 Fairmount Street
Lowell, MA 01852
Telephone:  978-458-0507
Facsimile: 978-453-6785
SJBoumil@Boumil-Law.com

Anthony M. Norris, Esq.
KYROS LAW OFFICES
17 Miles Road
Hingham, MA 02043

34

Telephone: (603) 995-1792
Facsimile: 617-583-1905
anorris@kyroslaw.com

Erica C. Mirabella, Esq.
MIRABELLA LAW LLC
132 Boylston Street, 5th Floor
Boston, MA 02116
Telephone: (617) 580-8270
Facsimile: 617-583-1905
erica@mirabellaLLC.com

R. Christopher Gilreath, Esq.
GILREATH & ASSOCIATES
200 Jefferson Avenue, Suite 711
Memphis, Tennessee 38103
Telephone: (901) 527-0511
Facsimile: 901-527-0514
chrisgil@sidgilreath.com

*Counsel for Plaintiffs.*

CERTIFICATE OF SERVICE

    I hereby certify that on this 8th day of August 2016, a copy of the foregoing *Response to Standing Order in Civil RICO Cases* was served via this Court's electronic case filing system.

/s/ *Brenden P. Leydon*
Brenden P. Leydon
